## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES LINCOLN STRONG, | No. 3:17-CV-01817 |
| Petitioner, | (Judge Brann)[1] |
| v. | |
| JOSH SHAPIRO, PA STATE ATTORNEY GENERAL, *et al.*, | |
| Respondents. | |

## MEMORANDUM OPINION

### DECEMBER 28, 2020

Petitioner James Lincoln Strong ("Petitioner" or "Strong") files the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 seeking relief from his judgment of sentence entered on June 29, 2011 in Court of Common Pleas of Luzerne County, Pennsylvania, criminal case 490 of 1984.  After a jury found Strong guilty of first-degree murder, kidnapping, and robbery, the state court imposed sentences of life imprisonment without parole for first-degree murder and consecutive periods of imprisonment of ninety months to twenty years for kidnapping and 102 months to twenty years for robbery.[2]

The petition is ripe for disposition.  For the reasons set forth below, the petition will be denied.

---

[1]   This matter has been reassigned due to the death of the Honorable James M. Munley.
[2]   Doc. 1, p. 1; Doc. 11-8, pp. 84, 85.

## I.    BACKGROUND

### A.    Factual Background

The criminal conduct at issue occurred in 1983.  The facts forth below are contained in the trial court's December 17, 2013 PA.R.A.P. 1925(a) opinion:

> On August 18, 1983, John Henry Strock was driving a white Ford Granada along Route 81 in Green Castle, Pennsylvania.  Mr. Strock stopped his car on the side of the road and offered a ride to two hitchhikers, Strong and James Alexander.  According to the testimony of Alexander, Alexander put his luggage in the trunk of the car while Strong kept his luggage with him.  (N.T. at 967).  Strong's luggage contained a .20 gauge sawed-off shotgun.  (N.T. at 967).  Alexander sat in the front seat, passenger's side while Strong sat in the backseat.  (N.T. at 967).  While travelling north on Route 81, Alexander fell asleep.  (N.T. at 968).
>
> When Alexander woke, he observed Strong produce a .20 gauge sawed-off shotgun and rested it upon Mr. Strock's shoulder.  (N.T. at 968).  Strong directed Mr. Strock to pull the car to the side of the road and exchange seats with Alexander, so that Alexander could drive the car.  (N.T. at 969).  After driving for some time, Alexander pulled the car to the side of the road along an isolated stretch of Route 81 in Dorrance Township.  (N.T. at 969).  Alexander walked into the woods a few steps in order to relieve himself.  When Alexander returned to the car, Strong and Mr. Strock were not present.  (N.T. at 970).  Alexander then heard a gunshot and a scream.  Approaching the sound of the gunshot, Alexander saw that Mr. Strock had been shot, and that his body had fallen into a gully.  Strong was holding a shotgun.  (N.T. at 971-72).  Alexander asked Strong why he had shot Mr. Strock.  Strong replied that he was tired of leaving witnesses behind.  (N.T. at 973).  Strong directed Alexander to go through Mr. Strock's pockets, and Alexander complied, handing the items to Strong.  (N.T. at 974).  Strong then walked back down into the gully.  Alexander heard another gunshot.  Strong returned to the car a short time thereafter.  (N.T. at 975-976).

Alexander and Strong got back into the Ford Granada and continued their journey north on Route 81. (N.T. at 976). They ultimately abandoned Mr. Strock's Granada when it ran out of gas. They removed some of Mr. Strock's personal belongings from the car and began to hitchhike. (N.T. at 980-982). Strong and Alexander continued hitchhiking until they were apprehended in Potsdam, New York. (N.T. 990-992). At the time of their arrest, Potsdam law enforcement officers discovered a .20 gauge shotgun in Strong's belongings. (N.T. 992). While in the custody of the New York police, Alexander agreed to cooperate with authorities and assist them in locating Mr. Strock's body. Upon returning to Pennsylvania, Alexander assisted the Pennsylvania State Police in locating the body.[3]

### B.    Procedural History

The procedural history, which spans decades, is a maze of state and federal court proceedings. The following partial recitation of the state court procedural history is also extracted from the trial court's PA.R.A.P. 1925(a) December 17, 2013 opinion:

This case involves the slaying of John Henry Strock (hereinafter "Strock") on August 18, 1983, in Luzerne County, Pennsylvania. On October 30, 1984, James Lincoln Strong (hereinafter "Strong") was convicted of first-degree murder of Strock, and sentenced to death. The judgment of sentence was affirmed in *Commonwealth v. Strong*, 522 Pa. 445, 563 A.2d 479 (1989), *cert. denied*, 494 U.S. 1060 (1990). In 1995, Strong filed a *pro se* Petition for Post Conviction Collateral Relief. Counsel was appointed to assist Strong and an amended Petition was filed. Evidentiary hearings on said Petition were held on April 7 and 8, 1997, and on May 8, 1997. On June 30, 1998, the trial court denied the Petition. Strong appealed. The Supreme Court of Pennsylvania accepted the appeal and, in a judgment dated November 29, 2000, held that the Commonwealth's failure to disclose an understanding it had with a key witness in the case, James Alexander (hereinafter "Alexander"), was in violation of the mandates of *Brady v.*

---

[3]    Doc. 11-8, pp. 6, 8.

*Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963). Accordingly, the case was remanded to this court for a new trial.

Pretrial motions filed by both the Commonwealth and Strong were disposed of by Order and Opinion of the trial court dated September 4, 2001. Both parties appealed. On April 23, 2003, the Superior Court of Pennsylvania affirmed in part and reversed in part the pretrial rulings of the trial court. The sole reversal of the trial court's rulings concerned the admissibility of the prior testimony of Alexander, who had since died and was unavailable to testify at the new trial. The Superior Court ruled that Alexander's prior testimony, both at trial and at the subsequent hearing on Strong's Petition for Post Conviction Collateral Relief, was admissible. On May 8, 2003, Strong filed a Motion for Reconsideration, which was denied by the Superior Court on July 3, 2003.

On August 7, 2003, Strong filed a Petition for Allowance of Appeal with the Supreme Court of Pennsylvania. Said Petition was denied. On March 30, 2004, Strong filed a Petition with the Supreme Court of Pennsylvania asking the Court to reconsider its denial of Strong's Petition for Allowance of Appeal based upon *Crawford v. Washington*, 124 S.Ct. 1354 (2004), a U.S. Supreme Court decision dated March 8, 2004. On August 6, 2004, the request for reconsideration was denied.

On January 11, 2005, Strong filed a Petition for Writ of Certiorari with the United States Supreme Court seeking to have the issue of Alexander's prior testimony decided in light of *Crawford*, *supra*. On March 24, 2005, the Petition was denied. On or about May 19, 2005, Strong filed a "Supplemental Defense Motion to Preclude the Prior Recorded Testimony of James Alexander" with the trial court. Said Motion sought to exclude Alexander's testimony in light of *Crawford*, *supra*. On August 18, 2005, the trial court heard argument on said Motion. The Motion was denied on September 9, 2005. Strong then filed a Motion to have the "*Crawford*" issue certified for appellate review. On October 19, 2005, the trial court denied Strong's Motion to Certify for Appellate Review.

On February 2, 2006, a Petition for Allowance of Appeal was filed in the Supreme Court of Pennsylvania. Said Petition was denied

on August 9, 2006. Strong then filed a Petition for Writ of Certiorari with the United States Supreme Court.  On February 20, 2007, that Petition was denied.

On June 20, 2007, Strong filed a Motion to Dismiss Based Upon the Double Jeopardy Protections of the United States Constitution, U.S. Const. Amends. V and XIV.  In said Motion, Strong related his challenge to the Superior Court's decision concerning the admission of Alexander's prior testimony "given the immediacy thereon of the U.S. Supreme Court's decision in [*Crawford*] and the fact that the Superior Court had not had the opportunity to address the *Crawford* question in its decision."  By Order dated June 21, 2007, the trial court denied the Motion.  On July 12, 2007, a Notice of Appeal was filed to the Superior Court of Pennsylvania, raising the Double Jeopardy issue.  On July 24, 2008, the Superior Court of Pennsylvania Affirmed the trial court's denial of the Motion to Dismiss.  On August 7, 2008, Strong requested reargument or reconsideration in the Superior Court.  On October 1, 2008, the Superior Court denied Strong's request.  Strong then filed a Petition for Allowance of Appeal with the Supreme Court of Pennsylvania; said Petition was filed on October 31, 2008.  On April 29, 2009, the Petition was denied. Reconsideration of the Petition for Allowance of Appeal was likewise denied on June 9, 2009.

From June 9, 2009, until trial, a number or pretrial motions were litigated and disposed of by the trial court. Retrial in this matter began with jury selection on May 9, 2011. Jury selection was completed on May 14, 2011.  (N.T. at 9). The jury was sworn on May 16, 2011 at 11:31 a.m. (N.T. at 33).  On May 25, 2011, the jury returned with a verdict of guilty to all counts of the Information. Strong was sentenced on June 29, 2011 to life imprisonment without parole on the charge of First Degree Murder; a consecutive sentence of ninety (90) months minimum to twenty (20) years maximum on the charge of Kidnapping; and a consecutive sentence of one hundred and two (102) months minimum to twenty (20) years maximum on the charge of Robbery. Two counts of Theft by Unlawful Taking merged with the charge of Robbery.

Strong filed a Post-Sentence Motion on July 11, 2011, which was denied by the trial Court on November 8, 2011.  A notice of Appeal to the Superior Court was filed on December 7, 2011.  Upon receipt, the

trial court issued an Order directing Strong to file a Concise Statement of Errors Complained of on Appeal pursuant to Pa.R.A.P. 1925(b). The trial court's Order also directed the Commonwealth to file a response to said Concise Statement…. Strong served the trial court with his Concise Statement on January 4, 2012. The Commonwealth's Response was filed on January 23, 2012. On February 16, 2012, the trial court submitted a written Opinion pursuant to Pa.R.A.P. 1925(a).

…Ultimately, by Order dated October 18, 2012, the Superior Court dismissed the appeal for failure to file a brief. On May 8, 2013, the trial court appointed new counsel for Strong. On September 27, 2013, Strong filed a Motion for Post Conviction Collateral Relief, alleging ineffective assistance of past counsel for his failure to file a brief with the Superior Court as aforestated. On October 17, 2013, the Commonwealth filed a Response to Strong's Motion and therein acknowledged the ineffectiveness of Strong's prior counsel. On October 24, 2013, Strong's Motion for Post Conviction Collateral Relief was granted by the trial court, and Strong's direct appeal rights were reinstated.

On October 29, 2013, Strong filed a Notice of Appeal. On November 1, 2013, new counsel was appointed to represent Strong on appeal. As per a directive from the trial court, on November 25, 2013, Strong filed a Concise Statement of Matters Complained of on an Appeal (Hereinafter "Concise Statement"). On December 2, 2013, the Commonwealth filed a Response to Strong's Concise Statement.[4]

As noted *supra*, the trial court issued its written opinion pursuant to PA.R.A.P. 1925(a) on December 17, 2013.[5]

In his appeal to the Superior Court of Pennsylvania, Strong raised the following issue for review: "Is the Defendant entitled to a dismissal of all charges and discharge when the Commonwealth has engaged in individual instances and

---

[4]   Doc. 11-8, pp. 68-72.
[5]   *Id.* at 68-82.

cumulative and continuous course of conduct going back to the first trial which

was intended to provoke the Defendant to move for a mistrial and also

intentionally undertaken to deprive the Defendant of a fair trial and designed to

secure a conviction in violation of the Double Jeopardy Clause of the Federal

Constitution, Fifth Amendment and the Pennsylvania Constitution, Article I,

Section 10?"[6]  On November 10, 2014, the Superior Court affirmed the judgment.[7]

On April 9, 2015, the Supreme Court of Pennsylvania denied Strong's Petition

Allowance of Appeal from the Superior Court.[8]

On January 12, 2016, Strong filed a collateral relief petition pursuant to the

Post Conviction Relief Act ("PCRA"), 42 PA.C.S.A. §§ 9541-9546, raising

prosecutorial misconduct, ineffective assistance of trial counsel, and trial court

error.[9]  The PCRA court appointed counsel and, on October 25, 2016, PCRA

counsel filed a *Turner/Finley* letter seeking to withdraw from the case based on

lack of merit.[10]  The PCRA court notified Strong of its intent to dismiss the PCRA

and afforded him twenty days to respond.[11]  Despite this notice, the PCRA court

failed to dismiss the PCRA petition.

---

[6]   Doc. 11-8, p. 85.
[7]   Doc. 11-8, pp. 84-88 (*Commonwealth v. Strong*, 2118 MDA 2013, unpub. mem., Pa. Super. 11/10/14 at 2).
[8]   *Id.* at 89 (*Commonwealth v. Strong*, 911 MAL 2014, Pa. 4/9/15).
[9]   *Id.* at 90-104.
[10]  Doc. 15, pp. 8-79.
[11]  *Id.* at pp. 80, 81.

On October 5, 2017, Strong filed the instant petition in federal court.[12]
Thereafter, on February 27, 2018, the PCRA court dismissed the PCRA petition.[13]
This state court action prompted this Court to stay the federal action to afford
Strong the opportunity to return to state court and complete his collateral review
proceedings.[14]  Strong pursued state court remedies by filing an appeal with the
Superior Court.  Because the notice of appeal referenced an order that was not on
the trial court docket, the Superior Court issued an Order on October 23, 2018,
stating, *inter alia*, that "[t]o the extent that Appellant is attempting to appeal the
Luzerne County trial court's February 27, 2018 order denying PCRA relief, he is
directed to show cause, within 10 days of the date of this order, why the appeal
should not be quashed as untimely filed.  Failure to respond to this directive may
result in quashal of this appeal without further notice."[15]  Strong failed to respond
to the order.  On November 28, 2018, the Superior Court quashed the appeal.[16]

Strong subsequently notified this Court that he had completed his state court
proceedings.[17]  On June 27, 2019, an order issued lifting the stay and directing
Respondents to supplement their original response to the petition.  Respondents

---

[12]  Doc. 1.
[13]  Doc. 15, p. 83.
[14]  Doc. 12.
[15]  *Id.* at 84.
[16]  *Id.* at 85.
[17]  Doc. 13.

filed a supplement on July 18, 2019.[18]

## II.   ISSUES PRESENTED FOR FEDERAL REVIEW

Strong sets forth the following issues in his petition, all of which he asserts were raised during his PCRA proceedings:

Ground One:  The prosecutor engaged in misconduct during the opening statement in disregarding a a pre-trial order prohibiting any reference to Strong's flight from Dunkin Donuts.[19]

Ground Two:  "Conferring with witness Theisen while she was still a sworn witness, during a break, to save her testimony."[20]

Ground Three:  "Mischaracterizing by Comm[on]wealth of witness Stewart that attempted to save Theisen's testimony."[21]

Ground Four:  "Commonwealth's referencing the victim's sense of charity during closing arguments."[22]

He asks the Court to "[g]rant Double Jeopardy Bar Retrial – Order Immediate Release and Vacate all Sentences."[23]

## III.   DISCUSSION

A habeas corpus petition pursuant to 28 U.S.C. § 2254 is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement.[24] The instant petition is governed by the Antiterrorism and Effective Death Penalty

---

[18]   Doc. 15.
[19]   Doc. 1, p. 5.
[20]   *Id.* at p. 6.
[21]   *Id.* at 8.
[22]   *Id.* at 9.
[23]   *Id.* at 14.
[24]   *Preiser v. Rodriguez*, 411 U.S. 475, 498-99 (1973).

Act of 1996, Pub.L.No. 104-132, 110 Stat. 1214, April 24, 1996 ("AEDPA").

Title 28 U.S.C. § 2254, provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.
>
> ...
>
> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
>> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.[25]

Section 2254 sets limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner.[26]  A federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."[27] This limitation places a high threshold on the courts.  Typically, habeas relief will only be granted to state prisoners in those instances where the conduct of state

---

[25]   28 U.S.C. § 2254.
[26]   *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011); *Glenn v. Wynder*, 743 F.3d 402, 406 (3d Cir. 2014).
[27]   28 U.S.C. § 2254(a).

proceedings resulted in a "fundamental defect which inherently results in a complete miscarriage of justice" or was completely inconsistent with rudimentary demands of fair procedure.[28]

## A. Exhaustion and Procedural Default

Habeas relief "shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State."[29] The exhaustion requirement is grounded on principles of comity in order to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions.[30] The habeas statute codifies this principle by requiring that a petitioner exhaust the remedies available in the courts of the State, 28 U.S.C. § 2254(b)(1)(A), meaning a state prisoner must "fairly present" his claims in "one complete round of the state's established appellate review process," before bringing them in federal court.[31] This requires that the claim brought in federal court be the substantial equivalent of that presented to the state courts.[32] Mere

---

[28]   *See, e.g., Reed v. Farley*, 512 U.S. 339, 354 (1994).

[29]   28 U.S.C. § 2254(b)(1)(A); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

[30]   *See Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000); Picard v. Connor, 404 U.S. 270, 275–76 (1971).

[31]   *O'Sullivan*, 526 U.S. at 845 (stating "[b]ecause the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established review process."); *see also Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Picard*, 404 U.S. at 275 (1971); *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997).

[32]   *Picard*, 404 U.S. at 278; *see also McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999) holding that petitioner must present both "factual and legal substance" of claim to state

reliance of state and federal claims on the same constitutional provision does not render the two claims substantially equivalent.[33]  Both the legal theory and the facts on which a federal claim rests must have been presented to the state courts.[34]

"When a claim is not exhausted because it has not been 'fairly presented' to the state courts, but state procedural rules bar the applicant from seeking further relief in state courts, the exhaustion requirement is satisfied because there is 'an absence of available State corrective process.'  28 U.S.C. § 2254(b).  In such cases, however, applicants are considered to have procedurally defaulted their claims and federal courts may not consider the merits of such claims unless the applicant establishes 'cause and prejudice' or a 'fundamental miscarriage of justice' to excuse his or her default.  *See Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)."[35]

To demonstrate "cause" for a procedural default, a petitioner must point to some objective external factor which impeded his efforts to comply with the state's procedural rule.[36]  "Prejudice" will be satisfied only if he can demonstrate that the outcome of the state proceeding was "unreliable or fundamentally unfair" as a

---

courts).

[33]  *See Brown v. Cuyler*, 669 F.2d 155 (3d Cir. 1982); *Zicarelli v. Gray*, 543 F.2d 466 (3d Cir. 1976).

[34]  *See Picard*, 404 U.S. at 277; *Brown*, 669 F.2d at 158–61.

[35]  *McCandless*, 172 F.3d at 260.

[36]  *See Murray v. Carrier*, 477 U.S. 478, 488 (1986).

result of a violation of federal law.[37]  Alternatively, if a petitioner demonstrates

that a "constitutional violation has probably resulted in the conviction of one who

is actually innocent,"[38] then a federal court can excuse the procedural default and

review the claim in order to prevent a fundamental miscarriage of justice.[39]  The

miscarriage of justice exception applies only in extraordinary cases, and actual

innocence means factual innocence, not legal insufficiency.[40] A petitioner

establishes actual innocence by asserting "new reliable evidence—whether it be

exculpatory scientific evidence, trustworthy eyewitness accounts, or critical

physical evidence—that was not presented at trial," showing that no reasonable

juror would have voted to find the petitioner guilty beyond a reasonable doubt.[41]

 Strong seeks relief on four grounds which mirror claims he pursued during

collateral review.[42]  The PCRA court ultimately denied relief on February 27,

2018.[43]  Strong appealed on August 27, 2018, after securing a stay in this Court.[44]

On October 23, 2018, the Superior Court issued the following Order:

> The Court of Common Pleas of Luzerne County denied appellant
> PCRA relief on February 27, 2018.  By order dated August 16, 2018,
> the United States District Court for the Middle District of Pennsylvania
> stayed Appellant's *habeas corpus* proceedings pending in that court, to

---

[37]  *See Lockhart v. Fretwell*, 506 U.S. 364, 366 (1993).
[38]  *Murray*, 477 U.S. at 496.
[39]  *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001).
[40]  *Bousley v. United States*, 523 U.S. 614, 623 (1998); *Murray*, 477 U.S. at 496.
[41]  *Hubbard v. Pinchak*, 378 F.3d 333, 339-40 (3d Cir. 2004).
[42]  Doc. 1, pp. 5-10; Doc. 15, pp. 47, 48.
[43]  Doc. 15, p. 83.
[44]  *Id.*

afford Appellant the opportunity to seek permission to file an appeal *nunc pro tunc* in this Court.  Appellant filed a *pro se* notice of appeal to this Court on August 27, 2018, purportedly from an August 22, 2018 order.  The Luzerne County trial court docket does not contain any entry for that date, and Appellant's docketing statement reflects that the appeal is purportedly from the February 27, 2018 order denying PCRA relief.

***

To the extent that Appellant is attempting to appeal an order of August 22, 2018, he is directed to show cause, within 10 days of the date of this order, why the appeal should not be quashed as taken from a purported order that is not entered upon the appropriate docket of the lower court.

To the extent that Appellant is attempting to appeal the Luzerne County trial court's February 27, 2018 order denying PCRA relief, he is directed to show cause, within 10 days of the date of this order, why the appeal should not be quashed as untimely filed.

Failure to respond to this directive may result in quashal of this appeal without further notice.[45]

The Superior Court issued a second order on November 28, 2018 stating "[t]hrough this Court's October 23, 2018 order, Appellant was directed to show cause why the instant appeal should not be quashed for lack of jurisdiction, as taken from a purported order that is not entered upon the appropriate docket of the lower court, or as untimely filed.  Appellant did not file a response.  Therefore, the above-captioned appeal is hereby quashed."[46]

It is clear that all of the claims contained in Strong's PCRA petition are procedurally defaulted.  He fails to identify some objective external factor which

---

[45]  *Id.* at pp. 83, 84.
[46]  *Id.* at 85 (caps and boldface type omitted).

prevented him from complying with the state's procedural rules and he does not

demonstrate that the outcome of the state proceeding was "unreliable or

fundamentally unfair" as a result of a violation of federal law.  Nor is there any

argument or indication that a "constitutional violation has probably resulted in the

conviction of one who is actually innocent."[47]  Thus, federal review of the claims

contained in the petition is barred.

Although Strong only identified for federal review claims he raised in his

PCRA petition, it is clear from the state court record that claims similar to those

raised in Grounds One, Two and Four were included in his direct appeal as a

cumulative error claim in the context of the Double Jeopardy clause.  I therefore

find it prudent to address the merits of the fully exhausted double jeopardy claim.

## B.    Merits

As stated *supra*, federal courts reviewing a state prisoner's application for a

writ of habeas corpus may not grant relief "with respect to any claim that was

adjudicated on the merits in State court proceedings" unless the claim (1) "resulted

in a decision that was contrary to, or involved an unreasonable application of,

clearly established Federal law, as determined by the Supreme Court of the United

States" or (2) "resulted in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in the State court

---

[47] *Murray*, 477 U.S. at 496.

proceeding."[48]

"[B]ecause the purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction,"[49] "[t]his is a difficult to meet and highly deferential standard . . . which demands that state-court decisions be given the benefit of the doubt."[50]  The burden is on Strong to prove entitlement to the writ.[51]

A decision is "contrary to" federal law if "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent."[52]  "[A] state court decision reflects an 'unreasonable application of such law' only 'where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents,' a standard the Supreme Court has advised is 'difficult to meet' because it was 'meant to be.' [*Harrison v.*] *Richter*, 562 U.S. 86, [ ] 102, 131 S.Ct. 770.  As the Supreme Court has cautioned, an 'unreasonable application of federal law is different from

---

[48]   28 U.S.C. § 2254(d).

[49]   *Greene v. Fisher*, 565 U.S. 34, 38 (2011) (internal quotations and citations omitted).

[50]   *Cullen*, 563 U.S. at 181(internal quotation marks and citation omitted).

[51]   *Id.*

[52]   *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

an incorrect application of federal law,' *Richter*, 562 U.S. at 101, 131 S.Ct. 770 (quoting *Williams*, 529 U.S. at 410, 120 S.Ct. 1495), and whether we 'conclude[ ] in [our] independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly' is irrelevant, as AEDPA sets a higher bar. *Williams*, 529 U.S. at 411, 120 S.Ct. 1495."[53]  A decision is based on an "unreasonable determination of the facts" if the state court's factual findings are objectively unreasonable in light of the evidence presented to the state court.[54]

Finally, Section 2254(e) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."[55]

Fully exhausted is the following claim:  "Is the Defendant entitled to a dismissal of all charges and discharge when the Commonwealth has engaged in individual instances and cumulative and continuous course of conduct going back to the first trial which was intended to provoke the Defendant to move for a mistrial and also intentionally undertaken to deprive the Defendant of a fair trial and designed to secure a conviction in violation of the Double Jeopardy Clause of

---

[53]  *Mathias v. Superintendent Frackville, SCI*, 876 F.3d 462, 476 (3d Cir. 2017).
[54]  *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).
[55]  28 U.S.C. § 2254(e)(1).

the Federal Constitution, Fifth Amendment and the Pennsylvania Constitution,
Article I, Section 10?"[56]

"The Double Jeopardy Clause of the Fifth Amendment protects a criminal
defendant from repeated prosecutions for the same offense. *United States v. Dinitz*,
424 U.S. 600, 606, 96 S.Ct. 1075, 1079, 47 L.Ed.2d 267 (1976). As a part of this
protection against multiple prosecutions, the Double Jeopardy Clause affords a
criminal defendant a 'valued right to have his trial completed by a particular
tribunal.'  *Wade v. Hunter*, 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974
(1949).  The Double Jeopardy Clause, however, does not offer a guarantee to the
defendant that the State will vindicate its societal interest in the enforcement of the
criminal laws in one proceeding.  *United States v. Jorn*, 400 U.S. 470, 483–484, 91
S.Ct. 547, 556, 27 L.Ed.2d 543 (1971) (plurality opinion); *Wade v. Hunter*, 336
U.S., at 689, 69 S.Ct., at 837.  If the law were otherwise, 'the purpose of law to
protect society from those guilty of crimes frequently would be frustrated by
denying courts power to put the defendant to trial again.'  *Ibid*."[57]

The Supreme Court has recognized that prosecutorial conduct that might be
viewed as harassment or overreaching, even if sufficient to justify a mistrial, does
not bar retrial absent intent on the part of the prosecutor to subvert double jeopardy

---

[56] Doc. 11-8, p. 85.
[57] *Oregon v. Kennedy*, 456 U.S. 667, 671–72 (1982).

protections.[58]  Importantly, "[w]here prosecutorial error even of a degree sufficient to warrant a mistrial has occurred, '[t]he important consideration, for purposes of the Double Jeopardy Clause, is that the defendant retain primary control over the course to be followed in the event of such error.'  *United States v. Dinitz*, *supra*, 424 U.S., at 609, 96 S.Ct., at 1080.  Only where the governmental conduct in question is intended to "goad" the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion.' "[59]

The Superior Court set forth the following standards of review in evaluating Strong's double jeopardy issue:

"An appeal grounded in double jeopardy raises a question of constitutional law." *Commonwealth v. Vargas*, 947 A.2d 777, 780 (Pa. Super. 2008) (citations omitted).  Our standard of review "as to whether the Double Jeopardy Clause has been violated is one of pure law and, as such, our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Drain*, 921 A.2d 16, 18 (Pa. Super. 2007) (citation omitted).

"The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution protects an individual against successive punishments and successive prosecutions for the same criminal offense." *Commonwealth v. Szebin*, 785 A.2d 103, 104 (Pa. Super. 2001) (citation omitted).  "In Pennsylvania, jeopardy does not attach and the constitutional prohibition against double jeopardy has no application until a defendant stands before a tribunal where guilt or innocence will be determined.  In a criminal jury trial, jeopardy attaches

---

[58]  *Id.* at 675–676.
[59]  *Id.*

when the jury is sworn." *Vargas*, 947 A.2d at 780 (internal citations omitted).

However, "there is very extensive and long-standing appellate court authority in this Commonwealth which clearly recognizes that an appellant who has secured a new trial on his own motion, whether on direct appeal or on collateral review, may generally not be heard to assert that the new trial so secured is barred by constitutional protections against double jeopardy." *Commonwealth v. Barber*, 940 A.2d 369, 374 (Pa. Super. 2007).

> The constitutional guarantee against double jeopardy protects a defendant in a criminal proceeding against multiple punishments or successive prosecutions for the same offense.  In general, when a mistrial is granted on a defendant's motion, or with his consent, the principles of double jeopardy do not bar a subsequence [sic] reprosecution.  The only exception to the rule permitting retrial is where the defendant's mistrial request is necessitated by prosecutorial error committed intentionally to force the accused to move for a mistrial, thereby affording the prosecution another, possibly more favorable opportunity to convict.  When such governmental overreaching or bad faith is found to exist, the double jeopardy clause will bar a retrial.

*Commonwealth v. Yost*.  451 A.2d 549, 550-551 (Pa. Super. 1982) (citations omitted).

Subsequent to *Yost*, the Pennsylvania Supreme Court clarified the standard by stating "that the double jeopardy clause of the Pennsylvania Constitution prohibits retrial of a defendant not only when prosecutorial misconduct is intended to provoke the defendant into moving for a mistrial, but also when the conduct of the prosecutor is intentionally undertaken to prejudice the defendant to the point of the denial of a fair trial."  *Commonwealth v. Smith*, 615 A.2d 321 (Pa. 1992).  *See also Commonwealth v. Strong*, 825 A.2d 658 (Pa. Super. 2003).[60]

---

[60]   Doc. 11-8, pp. 85-87.

The above standards of review mirror governing Supreme Court precedent.

In applying these standards of review, the state court opined as follows:

> Here, Strong argues that the Commonwealth committed "so many egregious instances of misconduct," which resulted in an "intentional undertaking to prejudice" Strong to the point of denial of a fair trial. Appellant's Brief at 23. Strong believes retrial should be barred. We disagree.
>
> After a thorough review of the voluminous certified record, as well as the briefs of the parties, we are confident that the trial court ably and methodically reviewed the validity of Strong's double jeopardy challenge. In his comprehensive opinion, President Judge Thomas F. Burke, examined each of Strong's claims of prosecutorial misconduct and properly reasoned that retrial is not barred by the Double Jeopardy Clause. We can find no error in the trial court's reasoning and, as such, we affirm on the basis of Judge Burke's well-written memorandum opinion filed pursuant to Pa.R.A.P. 1925(a). *See* Trial Court Opinion, 12/17/13.
>
> Judgment of sentence affirmed. Jurisdiction relinquished.[61]

The trial court opinion upon which the Superior Court relies, discussed the issues

as follows:

> The court finds that because the challenged incidents of misconduct were either proper actions on the part of the Commonwealth, were cured by the trial court's instructions, or were appropriately sanctioned, we cannot accept Strong's cumulative-effect argument. *See Commonwealth v. Johnson*, 719 A.2d 778 (Pa. Super. 1998); *Miles, supra*. Moreover, Strong's reliance upon *Commonwealth v. Smith*, 532 Pa. 177, 615 A.2d 321 (1992), in support of its prosecutorial overreaching contention is misplaced. In analyzing the prosecutor's conduct under the standards set forth in *Smith*, it is essential to determine whether the unavoidable effect of the contested comments or actions was to prejudice the jury, forming in their minds

---

[61] *Id.* at 87, 88.

a fixed bias and hostility towards the accused so as to hinder an objective weighing of the evidence and to impede the rendering of a true verdict. *Id.*; *Commonwealth v. Chmiel*, 777 A.2d 459 (Pa.Super. 2001). The court can find no evidence that the Commonwealth acted in bad faith or that it possessed a specific intent to deny Strong a fair trial. As stated above, the contested acts of the prosecutor were properly remedied by the court so as to ensure the rendering of a true verdict. Thus, Strong's argument must fail.[62]

The above demonstrates that the state courts reasonably applied clearly established federal law applicable to double jeopardy claims. And there is no indication that either decision was based on an unreasonable determination of the facts in light of the evidence presented.

The burden is on Strong to demonstrate entitlement to the writ. Strong fails to argue, much less meet his burden of demonstrating that the state courts' adjudication of the merits of the double jeopardy claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.[63]

## IV.   CERTIFICATE OF APPEALABILIY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order

---

[62] *Id.* at 79, 80.
[63] 28 U.S.C. § 2254.

in a proceeding under 28 U.S.C. § 2254.  A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right.[64]  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."[65]  Strong fails to demonstrate that a COA should issue.

The denial of a certificate of appealability does not prevent him from appealing the Order denying his petition so long as he seeks, and obtains, a certificate of appealability from the United States Court of Appeals for the Third Circuit.[66]

An appropriate Order will issue.

BY THE COURT:

_s/ Matthew W. Brann_
Matthew W. Brann
United States District Judge

---

[64]  28 U.S.C. § 2253(c)(2).
[65]  *Miller-El v. Cockrell*, 537 U.S. 322 (2003).
[66]  *See* FED. R. APP. P. 22(b)(1).